# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

JAMES WILLIAM LANGDEAUX,

        Petitioner,

vs.

MARK LUND,

        Respondent.

No. C12-4081-MWB

*ORDER ON MOTION TO EXPAND THE RECORD; and*

*REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254*

*TABLE OF CONTENTS*

I.    **INTRODUCTION**.................................................................. 2
    *A.   Factual Background* ................................................. 2
    *B.   Procedural Background* ........................................... 3
        *1.   State Court Proceedings*............................... 3
            *a.   Direct Appeal* ...................................... 4
            *b.   Post-conviction Relief Proceedings* .............. 4
        *2.   Federal Proceedings* .................................... 12

II.   **STANDARD OF REVIEW**................................................ 12

III.  **DISCUSSION**.................................................................. 15
    *A.   Motion to Expand the Record* .................................. 15
    *B.   Ineffective Assistance of Counsel Claims* ..................... 19
        *1.   Failure to Properly Advise Concerning Felony-Murder Rule for Purposes of Plea* ........................ 19
            *a.   Summary of Iowa Court of Appeals Decision* .............. 20
            *b.   Arguments of the Parties* ......................... 22
            *c.   Is the Standard Objective or Subjective?* .................... 23
            *d.   Did the Iowa Court of Appeals Decision Result in an Unreasonable Application of Federal Law?* ................ 24
        *2.   Failure to Investigate* ...................................... 31

IV.   **ORDER AND RECOMMENDATION**................................. 33

## I.    INTRODUCTION

An Iowa District Court jury convicted James William Langdeaux (Langdeaux) of murder in the first degree and going armed with intent on March 31, 1988.   He was sentenced to a life term of imprisonment for first-degree murder and a concurrent five-year term of imprisonment for going armed with intent.   The Iowa Court of Appeals affirmed his conviction on direct appeal.   Doc. No. 13-11; *State v. Langdeaux*, Sup. Ct. No. 88-852 (Iowa Ct. App. Aug. 23, 1989).

As I will explain in more detail below, Langdeaux pursued post-conviction relief (PCR) in Iowa's state courts over the next *twenty-three years*.   That process finally came to an end in 2012 upon the final denial of Langdeaux's claims.   On September 4, 2012, Langdeaux filed a *pro se* petition (Doc. No. 1) for writ of *habeas corpus* in this court pursuant to 28 U.S.C. § 2254.   Attorney Shelley Goff was appointed to represent him. Langdeaux filed a merits brief (Doc. No. 19) on November 1, 2013, along with a motion (Doc. No. 17) to expand the record to include a letter dated November 2, 1995.   I reserved ruling on the motion and stated it would be taken up with the merits of the petition.   Doc. No. 22.   I directed the respondent to proceed as if the letter was part of the record.   *Id.*   The respondent filed its merits brief (Doc. No. 26) on January 30, 2014. Langdeaux filed a reply (Doc. No. 27) on March 12, 2014.   The matter is fully submitted. The Honorable Mark W. Bennett, United States District Judge, has referred the matter to me for preparation of a report and recommended disposition.

### A.    Factual Background

On the night of August 21, 1987, Langdeaux and a friend went to the Windjammer, a bar in Arnold's Park, Iowa, after a night of drinking.   At some point, Langdeaux approached a table where Russell Johnson and Duane Krogman were sitting.   Neither Johnson nor Krogman knew Langdeaux, but Langdeaux began talking with Krogman. After a while, Krogman and Johnson asked Langdeaux to leave.   He did not leave right

away, but eventually got up and backhanded Krogman on the face before walking away. Krogman went to look for Langdeaux outside. However, Johnson found Langdeaux inside the bar, grabbed his arm and said they did not want any trouble. Langdeaux pulled out a knife and put it to Johnson's neck. Johnson let Langdeaux go and Langdeaux walked away. Johnson went to find Krogman so they could leave the bar.

Meanwhile, Krogman had re-entered the bar and approached Langdeaux. The two began to argue. Witnesses saw Langdeaux grab Krogman, make a quick thrust to Krogman's stomach and run out of the bar. Someone yelled that he had been stabbed. Several patrons and employees ran out of the bar to chase Langdeaux. They caught up with him about a block away and told Langdeaux to drop the knife, which he did. They took Langdeaux back to the bar and turned him over to the police. Krogman suffered a single stab wound that severed major blood vessels in his liver and died of internal bleeding.

## B.    Procedural Background

### 1.    State Court Proceedings

Langdeaux was charged with first-degree murder under the alternative theories of having killed Krogman willfully, deliberately and with premeditation or while participating in a forcible felony. He was also charged with going armed with intent. Two attorneys were appointed to represent him: James Clarity and Lonnie Saunders. A week before trial, the state offered a plea deal for Langdeaux to plead guilty to second-degree murder. Langdeaux declined and went to trial.

At trial, Langdeaux relied on the defenses of self-defense and intoxication. Langdeaux testified at his trial and claimed that he felt threatened by Krogman and Johnson and pulled out his knife to scare Krogman and defend himself. On March 31, 1988, the jury convicted Langdeaux of murder in the first degree and going armed with

intent. Langdeaux was sentenced to a life term of imprisonment without parole and a five-year term of imprisonment to run concurrently with the life term.

### a. Direct Appeal

Langdeaux appealed his convictions to the Iowa Supreme Court, which transferred the case to the Iowa Court of Appeals. On August 23, 1989, the court affirmed the convictions. *State v. Langdeaux*, Sup. Ct. No. 88-852 (Iowa Ct. App. Aug. 23, 1989).

### b. Post-conviction Relief Proceedings

### i. Iowa District Court Decision

**Procedural History.** The Iowa District Court provided a detailed summary of the bizarre procedural history of Langdeaux's PCR proceedings. Because that summary explains, at least to some degree, the astonishing duration of those proceedings, I will provide a condensed version here:

Langdeaux filed his first PCR application on May 30, 1990. The district court found the issues had been fully addressed in Langdeaux's direct appeal and dismissed the application. On appeal, the Iowa Court of Appeals disagreed that all of the issues had been addressed in the direct appeal, but nonetheless affirmed the ruling after finding the record was sufficient for it to resolve the issues Langdeaux had raised in the application. *Langdeaux v. State*, Sup. Ct. No. 90-1160 (Iowa Ct. App. Nov. 26, 1991).

Langdeaux filed a second PCR application on May 19, 1992. The state filed a motion to dismiss, which was granted without notice or hearing. On appeal, the Iowa Supreme Court reversed and remanded to the district court with instructions to set a hearing on the state's motion to dismiss. Langdeaux then filed *pro se* motions including a motion to appoint counsel, motions to amend and various discovery motions. Counsel was appointed and a motion was filed to recast Langdeaux's application. The state filed responses to these motions and renewed its motion to dismiss.

The district court interpreted the remand instructions to mean it could not address other matters that had been raised after the original motion to dismiss. Following a hearing, the court granted the state's original motion to dismiss and ruled all other pending motions moot. On appeal, Larry Stoller was appointed as counsel for Langdeaux after several other appointed attorneys withdrew. On June 27, 1995, the Iowa Court of Appeals reversed and remanded with instructions for the district court to consider Langdeaux's various motions and the state's renewed motion to dismiss. On November 22, 1995, the state resisted Langdeaux's motion for discovery. Langdeaux, through counsel, filed a response on November 28, 1995.

Inexplicably, nothing further occurred until January 31, 1997, when Langdeaux filed a 99-page *pro se* supplemental application for post-conviction relief and a motion to personally appear at all further proceedings in his case. The state filed a motion to strike the supplemental application and resisted the motion to personally appear. A hearing was set for pending motions, including the motion for discovery Langdeaux had filed in May 1993. The hearing was held on April 21, 1997. The court issued an order the next day sustaining the majority of Langdeaux's discovery motion, overruling the state's motion to strike his supplemental application for post-conviction relief, denying Langdeaux's motion to personally appear and overruling his motion to record all remaining post-conviction proceedings. On May 12, 1997, the state filed a motion to reconsider Langdeaux's discovery motion. Langdeaux filed a resistance.

Again inexplicably, an order setting hearing on that motion was not entered until May 18, 2000. The hearing was scheduled for September 15, 2000, a date agreed between Stoller and Charles Thoman, who represented the state. However, Stoller requested repeated continuances that resulted in the hearing being rescheduled for April 30, 2001.

Three more years then passed with no action. On September 22, 2004, Langdeaux filed a *pro se* motion for sanctions against the state for failing to respond to his discovery requests. On October 29, 2004, Langdeaux filed a *pro se* motion for default requesting

the court grant his motion for sanctions due to the state's failure to timely resist his motion. The state filed a resistance on November 5, 2004, arguing any delay was due to continuances and inaction by Stoller. On August 29, 2005, the court ruled on the state's motion to reconsider its ruling on Langdeaux's motion for discovery and issued a new discovery order.

Nothing further occurred until April 30, 2007, when Langdeaux filed a *pro se* First Status Report and Request for Judicial Notice in which he outlined the steps he had taken to keep his case moving forward. The district court then scheduled a pretrial conference and ordered that any amendments to Langdeaux's application be filed by that date. Langdeaux filed a *pro se* amended PCR application on July 30, 2007, and Stoller filed a similar motion to amend on August 1, 2007, along with a memorandum and attachments in support.

On August 13, 2007, the state filed a motion for summary disposition. The court held a hearing and granted the state's motion in its entirety on March 31, 2008. Both Langdeaux and his attorney filed motions to amend, enlarge and reconsider the ruling. On July 8, 2008, the court found there was a factual issue as to two of Langdeaux's claims: (1) whether Langdeaux's trial counsel discussed the aspects of the felony-murder rule as it related to willful injury as the predicate felony and (2) whether his attorneys failed to provide effective assistance by failing to more actively pursue favorable testimony from the sheriff.

Langdeaux, through counsel, then filed motions for adjudication of law points, a motion to amend his petition, a motion for an order directing discovery and a motion for retention of an expert witness. The court sustained his motions and allowed Langdeaux to submit the additional claim that his continued incarceration was declared unconstitutional by the Iowa Supreme Court in *State v. Heemstra*, 721 N.W.2d 549 (Iowa

2006).[1]  Trial was scheduled for January 29, 2009, but was continued to February 3, 2009.  Trial could not be completed because attorney Clarity, a key witness, was unavailable.  The final day of trial was held on November 12, 2009.  The court issued its ruling on August 20, 2010.

**The Decision.**  The three issues taken up by the district court at Langdeaux's PCR trial were:

> (1)  Whether Langdeaux's trial counsel were ineffective in failing to advise Langdeaux about Iowa's felony-murder rule as it applied to his case
>
> (2)  Whether Langdeaux's trial counsel rendered ineffective assistance in failing to further investigate statements made by Osceola County Sheriff Robert Rolfes in his statement to DCI Agent Lubkeman and/or in failing to call Sheriff Rolfes to testify concerning the content of his statement during the underlying criminal trial
>
> (3)  Whether Langdeaux's continued incarceration following the Supreme Court of Iowa's decision in the case of *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006) abrogating portions of Iowa's felony murder rule constitutes cruel and unusual punishment.

Doc. No. 13-24 at 338-55.  I will only discuss the court's ruling on the first two issues as those are the only issues raised in Langdeaux's section 2254 petition that are briefed.

On the first issue, the court concluded that Langdeaux's trial counsel performed below the standards demanded of a reasonably competent attorney.  Doc. No. 13-24 at 330, 342.  Specifically, the court found that Langdeaux's counsel did not advise him "about the application and implications of the felony murder rule to his case."  *Id.* at

---

[1] In *Heemstra*, the Iowa Supreme Court held "if the act causing willful injury is the same act that causes the victim's death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes."  *State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006).

342. In making this finding, the court noted that there was a complete lack of evidence in the record establishing that trial counsel had ever explained the felony-murder rule to Langdeaux. *Id.* at 331-32. Moreover, while the state had made it perfectly clear in its trial brief that willful injury was the predicate forcible felony, attorney Clarity's oral motion for judgment of acquittal and motion to dismiss at the end of the state's case indicated confusion on his part about that issue. *Id.* The court also noted that while attorney Saunders had made a record with Langdeaux concerning a plea offer made the week before trial, under which Langdeaux could have plead guilty to second-degree murder, that record did not reference the felony-murder rule. *Id.* at 331-32.

After finding that Langdeaux's trial counsel had performed deficiently, the court analyzed whether Langdeaux demonstrated prejudice as a result of that deficient performance. The court considered three questions based on *Wanatee v. Ault*, 101 F. Supp. 2d 1189, 1200-01 (N.D. Iowa 2000). These questions were:

> (1) Was a plea agreement formally offered by the state?
>
> (2) Would Langdeaux have accepted that plea offer if he had been properly advised by trial counsel about the law applicable to the charges against him?
>
> (3) Could Langdeaux have performed the agreement if he had accepted it?

Doc. No. 13-24 at 342. The court answered the first question affirmatively, finding a plea agreement had been formally offered the week before trial. For the second question, the court applied a subjective standard and considered whether there was other credible, non-conclusory evidence that Langdeaux would have plead guilty had he been properly advised. The court found that there was insufficient evidence to conclude Langdeaux would have accepted the plea agreement had he been properly advised by his counsel. It considered Langdeaux's assertion that he would have accepted the plea along with the great disparity between the sentencing exposure for first-degree murder and second-

degree murder. However, it found this evidence was outweighed by other evidence. It noted Langdeaux maintained that he had acted in self-defense immediately following his arrest, throughout his testimony at trial and even in the letter he wrote to the sentencing judge. *Id.* at 344. The court also considered Langdeaux's other defenses of insanity, diminished responsibility and intoxication, noting they were defenses to both alternatives of the first-degree murder charge. The court also found it significant that Langdeaux had initially lied to the officers about the source of the knife. It stated that while Langdeaux had subsequently retracted the lie, the court was "left with the impression that Langdeaux was willing to go so far as to lie during the underlying criminal proceedings to avoid responsibility, and the possibility of being convicted." *Id.* at 345.

The court went on to find that there was also insufficient evidence in the record to establish the third question of whether Langdeaux would have been able to provide the required factual basis for the trial court to accept a plea of guilty to second-degree murder. *Id.* at 345-46. It noted that the state would not allow Langdeaux to enter an *Alford* plea, so Langdeaux would have had to provide the court with a factual basis that

> (1) on August 22, 1987, he stabbed Duane Krogman; (2) that Krogman died as a result of being stabbed; and (3) that Langdeaux acted with malice aforethought, which would have required that he acted with 'a fixed purpose or design to do some physical harm to [Krogman] which [existed] before the act [was] committed.'

*Id.* For the same reasons the court found Langdeaux would not have accepted the guilty plea, it also found Langdeaux would not have been able to provide the required factual basis for the court to have accepted a guilty plea to second-degree murder. *Id.* Therefore, it concluded Langdeaux had not demonstrated prejudice as a result of his counsels' alleged deficient performance.

Langdeaux's second ineffective assistance of counsel claim alleged his attorneys should have done more with a statement provided by Sheriff Rolfes concerning the

victim's character. Agent Roy Lubkeman summarized the statement in his investigative report as follows:

> Sheriff ROLFES stated that he had never had trouble with DUANE and knew him quite well. He stated that DUANE could be aggressive if he wanted to and he wouldn't back down from a fight. ROLFES also stated that DUANE didn't go out looking for fights, however. ROLFES also stated that DUANE was good at "bullshitting" with people. He stated DUANE was a good worker. He further stated that there were a few family problems in DUANE's family, but those weren't anything serious. He said that at times DUANE had worked on farms and at elevators for quite a long time and had a good working record. At the time of his death DUANE was working at Chase Bag Company in Sheldon, Iowa. ROLFES stated that DUANE was a typical Iowa kid with a typical background. He stated that DUANE's father, KENNEY, could be pretty hard on the family.
>
> No further information was discussed in regard to DUANE KROGMAN, and the interview was terminated.

Petitioner's PCR Exhibit 2; Doc. No. 13-24 at 273.

The court found Langdeaux's trial counsel did not breach the standard of conduct of a reasonably competent attorney by failing to conduct further investigation based on this statement or call Sheriff Rolfes as a witness in the trial. *Id.* at 348. It noted that Langdeaux's attorneys had spoken to Sheriff Rolfes and after completing their formal and informal discovery, they made the tactical decision not to make Krogman's character an issue at trial or call Sheriff Rolfes as a witness at trial. This was partly based on attorney Clarity's prior dealings with Sheriff Rolfes in other cases and the fact that the state had three or four eyewitnesses who would testify that Krogman was not the aggressor when Langdeaux stabbed him. The court also found Langdeaux had failed to establish any prejudice from this alleged error. *Id.* at 349-50.

## ii.        *Appellate Court Decision*

On appeal, Langdeaux claimed his trial counsel performed deficiently in the following areas: (1) failing to investigate a witness's statement, (2) providing inadequate advice about a plea offer from the state, (3) failing to challenge a juror for cause, and (4) failing to object to prosecutorial misconduct. *Langdeaux v. State*, 817 N.W.2d 31 (Iowa Ct. App. 2012) (unpublished table decision). I will discuss the Iowa Court of Appeals decision on the first two issues, as those are the issues raised in Langdeaux's section 2254 petition.

As for his counsels' alleged failure to further investigate Sheriff Rolfes's statement, the court noted that one of Langdeaux's attorneys testified he had interviewed the sheriff himself. He then made the tactical decision not to call him as a witness because the sheriff would also testify Langdeaux was a troublemaker. The court stated it would not second-guess counsels' strategic decision, which was made after reasonable investigation. It found counsels' conduct did not amount to ineffective assistance.

The Iowa Court of Appeals also agreed with the district court that Langdeaux had not shown prejudice from his counsels' alleged error in failing to advise him about the felony-murder rule and how it applied to his case, specifically regarding the state's plea offer. The court noted that Langdeaux's trial counsel had testified at the PCR trial that Langdeaux "was convinced he didn't do anything wrong" and that he would have been unable to establish the factual basis for a plea to second-degree murder because he would not have admitted that he killed Krogman without provocation. The court also considered the fact that Langdeaux had embellished the details of the victim's supposed attack on him, which he admitted to at trial. He also admitted lying to the police about where he got the knife and that Krogman's friend had ripped his shirt. The court considered these details relevant because the *Wanatee* court considered the fact that the defendant did not lie to avoid liability in determining whether he would have plead guilty if he had been properly advised. *See Wanatee*, 101 F. Supp. 2d at 1206.

The court also noted Langdeaux's statement to the sentencing judge that he had acted in self-defense and his statement at the PCR trial that he did not believe he had acted with malice aforethought. Finally, the court stated that if the jury had accepted Langdeaux's justification defense, he would have been acquitted of first-degree murder, second-degree murder and willful injury. The court found all of this evidence seriously undermined Langdeaux's after-the-fact assertion that he would have accepted the state's offer and plead guilty to second-degree murder if he had been properly informed of the felony-murder rule. The Iowa Court of Appeals therefore affirmed the district court's denial of this claim.

### 2.    *Federal Proceedings*

In his petition before this court, Langdeaux asserted four claims: (1) ineffective assistance of counsel for attorneys' failure to properly advise him of the law of his case, (2) ineffective assistance of counsel for failure to properly investigate a sheriff's statement and use it to impeach witnesses, (3) ineffective assistance of counsel by his post-conviction counsel for failure to argue that the *Heemstra* decision should apply to petitioner's case and (4) ineffective assistance of counsel for failure to strike a juror for cause. In his merits brief, Langdeaux concedes that the last two claims were not properly preserved because they were not submitted to the Iowa Supreme Court in an application for further review. Therefore, his petition is limited to the first two claims.

## II.    STANDARD OF REVIEW

Langdeaux brings this petition pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under AEDPA, federal courts apply a "deferential standard of review" to the state court's determinations of law and fact if the state court adjudicated the claim on the merits. *Taylor v. Bowersox*, 329 F.3d 963, 967-68 (8th Cir. 2003). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Langdeaux brings his petition under section 2254(d)(1). There are two categories of cases under this section that may provide a state prisoner with grounds for federal habeas relief: (1) if the relevant state-court decision was "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) if the relevant state-court decision "involved an *unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1) [emphasis added]).

A state court can violate the "unreasonable application" clause of section 2254(d)(1) in two ways: (a) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (b) where "the State court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not

apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

The state court reviews a post-conviction relief petition based on ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, the person challenging a conviction must show that (1) counsel provided deficient assistance to the extent that "counsel's representation fell below an objective standard of reasonableness" and (2) there was prejudice as a result. *Id.* at 688. The errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and the defendant was deprived of a fair trial. *Id.* at 687. The court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Federal habeas courts must then find that a state court's application of *Strickland* was unreasonable under section 2254(d) to grant habeas relief. This is also a highly deferential inquiry because "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Therefore, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003)).

For a claim to be successful under section 2254(d)(1), "[i]t is not enough that the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be unreasonable." *Jones v. Wilder-Tomlinson*, 577 F. Supp. 2d 1064, 1073 (N.D. Iowa 2008) (citing *Williams,* 529 U.S. at 411; *Bell v.*

*Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ("an unreasonable application is different from an incorrect one.")). *See Ringo v. Roper*, 472 F.3d 1001, 1003 (8th Cir. 2007) (same). "[A] federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent." *Jones*, 577 F. Supp. 2d at 74 (citing *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)); *see Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (to be overturned, the state court's application of federal law must have been "objectively unreasonable") (citing *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005)).

The petitioner bears the burden of showing that the state court's ruling on the claim presented was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

## III.   DISCUSSION

### A.   *Motion to Expand the Record*

On the same day he filed his merits brief, Langdeaux also filed a motion (Doc. No. 17) to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases and by AEDPA. Rule 7 states:

> **Rule 7. Expanding the Record**
>
> **(a) In General.** If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated.

> **(b) Types of Materials.** The materials that may be required include letters predating the filing of the petition, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits may also be submitted and considered as part of the record.
>
> **(c) Review by the Opposing Party.** The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

Rule 7, Rules Governing Section 2254 Cases. Langdeaux seeks to introduce a letter dated November 2, 1995, from Charles Thoman (the prosecutor at Langdeaux's trial) to Larry Stoller (Langdeaux's PCR counsel). That letter states in relevant part:

> The State offered Mr. Langdeaux the opportunity to plead guilty to second degree murder. He declined. I recall that the defense attorneys indicated that a plea to voluntary manslaughter might be acceptable to the defendant, but the State never offered such a plea nor would we have accepted a plea to any form of manslaughter.

Doc. No. 17-1. Langdeaux argues this letter rebuts trial counsel's testimony at the PCR trial that Langdeaux would not have plead guilty to anything. He explains that this document was found in Stoller's file and it was deficient performance by Stoller not to present it at the PCR trial, which resulted in prejudice to Langdeaux. Langdeaux argues the letter should come into the record pursuant to the exception found in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

In *Martinez*, the Supreme Court considered the issue of whether a federal habeas court could excuse a procedural default of an ineffective assistance claim when the claim had not been properly presented in state court due to an attorney's errors in an initial-review collateral proceeding. *Martinez*, 132 S. Ct. at 1313. Particularly relevant to that case was Arizona's rule that a convicted person could not allege ineffective assistance of trial counsel on direct appeal. Rather, he or she had to bring the claim in state collateral proceedings. *Id.* The petitioner's post-conviction counsel in *Martinez* did not raise the

ineffective assistance of counsel claim in the collateral proceeding and only filed a statement saying she found no meritorious claims. *Id.* at 1314. With new counsel, Martinez filed a second action for post-conviction relief raising an ineffective assistance of counsel claim. His petition was dismissed based, in part, on a rule requiring a claim to have been made in a previous collateral proceeding. *Id.* On federal habeas review, petitioner's counsel argued the collateral proceeding was the first place Martinez was able to challenge his conviction on ineffective assistance of counsel grounds and he was denied his constitutional right to an effective attorney in the collateral proceeding. For this reason, he claimed his procedural default should be excused. *Id.* at 1314-15.

The Court narrowly held that where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective. *Id.* at 1320. The court made it clear that his post-conviction counsel's ineffectiveness was not grounds for relief, but merely a cause for his procedural default. *Id.*

In this case, the state argues *Martinez* does not apply because Langdeaux only alleges that his PCR counsel failed to put forth an additional piece of evidence in support of one of Langdeaux's claims. I agree with the state that *Martinez* is not as broad as Langdeaux claims and does not extend to the situation where a petitioner seeks to add evidence to the record that was not considered by the state court due to the alleged ineffective assistance by his PCR counsel. *See Martinez*, 132 S. Ct. 1320 (acknowledging that the Court's previous holding in *Coleman v. Thompson*, 501 U.S. 722 (1991) that negligence on the part of a prisoner's post-conviction counsel does not qualify as cause, "governs in all but the limited circumstances recognized here.").

Review under section § 2254(d)(1) is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct.

1388, 1398 (2011). Federal courts may consider new evidence to support a claim "only if [the petitioner] was not at fault in failing to develop that evidence in state court, or (if he was at fault) if the conditions prescribed in § 2254(e)(2) were met." *Holland*, 542 U.S. at 652-53. "A prisoner is at fault in failing to develop the evidence if there is a 'lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Landrum v. Mitchell*, 625 F.3d 905, 924 (6th Cir. 2010) (quoting *Williams*, 529 U.S. at 432.); *see also Holland*, 542 U.S. at 653 ("Attorney negligence . . . is chargeable to the client and precludes relief unless the conditions of § 2254(e)(2) are satisfied.").

Langdeaux argues the letter was not previously made a part of the record because his post-conviction counsel provided ineffective assistance by failing to submit the letter into evidence. Therefore, Section 2254(e)(2) applies which provides:

> If the [Section 2254] applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> (A)    the claim relies on—
>
>     (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>     (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Langdeaux has not shown that his claim relies on a new rule of constitutional law or that the letter could not have previously been discovered through the exercise of due diligence under 28 U.S.C. § 2254(e)(2). Indeed, the letter should have easily been

discovered as it was addressed to Langdeaux's PCR counsel and was found in the file he provided to Langdeaux's current counsel. Additionally, Langdeaux has not shown that the letter clearly and convincingly establishes that he would have plead guilty to the state's offer of second-degree murder but for his trial counsel's alleged ineffective assistance, as required under subsection B. The requirements of section 2254(e)(2) are not excused by the alleged ineffective assistance of Langdeaux's PCR counsel. *See Martinez*, 132 S. Ct. at 1320 (addressing the application of *Coleman* to all other situations involving negligence by PCR counsel); *Wooten v. Norris*, 578 F.3d 767, 778 (8th Cir. 2009) ("It is well-established that ineffective assistance of counsel during state post-conviction proceedings cannot serve as cause to excuse factual or procedural default."). For these reasons, Langdeaux's motion to expand the record will be **denied**.

## B.    *Ineffective Assistance of Counsel Claims*

### 1.    *Failure to Properly Advise Concerning Felony-Murder Rule for Purposes of Plea*

Langdeaux argues the state court decisions resulted in an unreasonable application of clearly established federal law by using a subjective instead of objective standard in evaluating whether Langdeaux was prejudiced by his trial counsels' errors in failing to advise him on the felony-murder rule.[2] The Sixth Amendment right to effective assistance of counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). Where ineffective assistance results in rejection of a plea offer and the defendant is convicted at the ensuing trial, the *Strickland* prejudice test requires the defendant to show that

---

[2] I will not address the first *Strickland* prong (deficient performance) with regard to this ineffective assistance claim because both Iowa courts denied the claim based on the prejudice prong (with the Iowa District Court finding there was deficient performance and the Iowa Court of Appeals analyzing only the prejudice prong). *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

but for the ineffective advice of counsel there is a reasonable
probability that the plea offer would have been presented to
the court (*i.e.*, that the defendant would have accepted the pea
and the prosecution would not have withdrawn it in light of
intervening circumstances), that the court would have
accepted its terms, and that the conviction or sentence, or
both, under the offer's terms would have been less severe than
under the judgment and sentence that in fact were imposed.

*Id.* at 1385. There are three questions the court must consider in evaluating whether the

petitioner has established prejudice. They are (1) whether a plea agreement was formally

offered by the government, (2) whether the petitioner would have accepted the plea

agreement offered had he been properly advised by counsel about the law applicable to

the charges against him and (3) whether the petitioner could have performed the

agreement if he had accepted it. *See Wanatee*, 101 F. Supp. 2d at 1200-01. The Iowa

Court of Appeals focused on the second and third questions in affirming the district

court's denial of this claim.


### a.     Summary of Iowa Court of Appeals Decision

The Iowa Court of Appeals stated that the appropriate prejudice inquiry "focuses

on whether counsel's constitutionally ineffective performance affected the outcome of the

plea process." *Langdeaux v. State*, 817 N.W.2d 31, at *3 (Iowa Ct. App. 2012)

(unpublished table decision) (citing *Kirchner v. State*, 756 N.W.2d 202, 205 (Iowa

2008)). For an applicant who previously rejected a plea offer in favor of going to trial,

he had to show that "but for counsel's advice, he would have accepted the plea" in order

to prove prejudice. *Id.* The court noted Langdeaux had to present some "credible, non-

conclusory evidence that he would have plead guilty had he been properly advised" and

that self-serving statements alone would not be sufficient to make the required showing.

*Id.*

In evaluating whether Langdeaux met this standard, the court first considered the testimony of one of Langdeaux's trial attorneys at the PCR trial. Counsel testified that Langdeaux "was convinced he didn't do anything wrong" and Langdeaux was angry that he would have to plead guilty and have a mandatory sentence under the state's plea offer. Counsel stated Langdeaux "was firm that he didn't want to do it." *Id.* He also did not think Langdeaux would have been able to establish the factual basis for a plea to second-degree murder because Langdeaux would not admit that he killed the victim without provocation and the plea would have been "a shambles" because Langdeaux was "just adamant that he didn't do anything wrong." *Id.*

Next, the court considered other evidence in the record that supported trial counsels' recollection of Langdeaux's stance in rejecting the plea offer. It noted that before, during and after the trial Langdeaux had maintained his actions of stabbing Krogman were justified. *Id.* Following his arrest, the court noted Langdeaux told police he stabbed the victim in self-defense and repeated this story to a friend with him that night. *Id.* Langdeaux had embellished details of the victim attacking him first and Langdeaux admitted at trial that the story to his friend was a lie. *Id.* The court also noted Langdeaux had lied to police about where he got the knife and about the victim's friend ripping his shirt. Langdeaux had also written a letter to the court after trial which stated, "I did stab Mr. Krogman out of fear for myself, because he was coming after me, and I perceived Mr. Johnson on the other side of me, blocking my path. I felt it was necessary to defend myself." *Id.* Further, the court pointed out that even at the PCR trial, Langdeaux agreed with the state that he did not believe he acted with malice aforethought. *Id.*

Finally, the court noted that if the jury had accepted Langdeaux's justification defense, he would have been acquitted of not only first-degree murder, but also the lesser-included offenses of second-degree murder and willful injury (the predicate felony). *Id.* at *4. The court stated, "This seriously undercuts Langdeaux's after-the-fact assertion

that he would have accepted the State's offer and pleaded guilty to second-degree murder if he had been informed of the felony-murder rule." *Id.*

### b. *Arguments of the Parties*

Langdeaux argues the proper test for determining prejudice based on deficient performance at the plea negotiation stage is objective and focuses on whether a reasonable defendant would have plead guilty but for counsels' deficient performance. He contends the Iowa Court of Appeals focused too much on what Langdeaux did based on counsels' faulty (or complete lack of) advice rather than on what a reasonable defendant in Langdeaux's position would have done with proper advice. Langdeaux asserts that while his conduct in the absence of proper advice is not entirely irrelevant, it is of limited probative value because the focus should be on what Langdeaux reasonably would have done if he had been properly advised by counsel. Langdeaux argues there is substantial objective evidence in the record to support the conclusion that a reasonable defendant in Langdeaux's circumstances would have taken the deal and changed his plea.

Respondent argues the Iowa Court of Appeals correctly identified the standard as subjective and its decision did not result in an unreasonable application of federal law.[3] It contends the court reasonably concluded that Langdeaux would not have accepted the plea offer with proper advice and could not have provided the factual basis for the plea. It points out that even under an objective standard, there is no reason to believe that a rational individual asserting self-defense and lack of malice to first-degree murder would accept a plea offer since those defenses are equally applicable to second-degree murder— the offense offered in the plea deal. Respondent also points out that the evidence cited

---

[3] In its brief, respondent appears to have misstated petitioner's argument as arguing for a subjective test instead of an objective one. Due to this confusion, respondent seems to argue in favor of an objective test stating that "it is far from clearly established that the constitutional standard is necessarily subjective." Yet, it points out the Iowa courts did apply a subjective test. Doc. No. 26 at 13. Nonetheless, both parties agree that the Iowa courts applied a subjective test and I must consider whether this is the correct governing rule.

by the Iowa Court of Appeals was primarily used to discredit Langdeaux's after-the-fact statement that he would have plead guilty if he had been properly advised. It contends that the evidence referenced by petitioner purporting to show Langdeaux would have accepted the plea is not enough to demonstrate the court's decision was an unreasonable application of federal law.

### c.    Is the Standard Objective or Subjective?

In *Wanatee v. Ault*, Judge Bennett considered whether the prejudice question in the context of plea bargaining is subject to an objective or subjective analysis. He acknowledged that according to the Eighth Circuit Court of Appeals, "[t]o establish prejudice, . . . the [petitioner] must show that, but for his counsel's advice, he would have accepted the plea." *Wanatee*, 101 F. Supp. 2d at 1204. While this reads like a subjective standard, he concluded that an objective standard is required based on *Hill v. Lockhart*. *Id.* In *Hill,* the Supreme Court stated, "As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985).

On appeal, the Eighth Circuit affirmed the judgment in favor of the petitioner but stated in dicta that the prejudice standard is subjective. It explained,

> We recognize that the district court purported to apply an 'objective' standard in analyzing whether Wanatee would have accepted the plea offer had he been properly advised. Although we think that the inquiry into what Wanatee would have done under different circumstances is necessarily subjective, we believe it is clear from the district court's opinion that the court actually applied a subjective analysis. It is therefore unnecessary to remand this case to the district court for consideration under the proper standard.

*Wanatee v. Ault*, 259 F.3d 700, 704 (8th Cir. 2001) [emphasis added].

In its decision in Langdeaux's case, the Iowa Court of Appeals cited *Kirchner v. State*, 756 N.W.2d 202, 205 (Iowa 2008). In that case, the Iowa Supreme Court concluded that the prejudice inquiry was subjective, citing the Eighth Circuit's decision in *Wanatee*. I agree, based on *Wanatee*, that the Iowa Court of Appeals correctly applied a subjective standard to the prejudice inquiry. I will now consider whether it reasonably applied that standard in concluding Langdeaux had not demonstrated prejudice as a result of his trial counsels' errors.

### d.     Did the Iowa Court of Appeals Decision Result in an Unreasonable Application of Federal Law?

Langdeaux argues that the evidence cited by the Iowa Court of Appeals is of little probative value because it focuses on Langdeaux's conduct in the absence of the proper advice, rather than what Langdeaux would have done had he been properly advised. Doc. No. 27 at 6 (citing *Wanatee*, 101 F. Supp. 2d at 1204). He contends all of his conduct leading up to the plea offer, at the time of the plea offer, during trial and during his sentencing was tainted by the improper advice of his counsel. Under *Strickland*, the Iowa Court of Appeals considered the "reasonable probability" or "likelihood" that the result would be different absent counsels' errors. *Strickland*, 466 U.S. at 694; *Hill*, 474 U.S. at 59-60. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because the standard is subjective, the court had to consider Langdeaux's conduct and decision-making in the absence of proper advice to determine the probability that he would have acted or decided differently with proper advice.

Langdeaux argues there is substantial evidence in the record to suggest that he would have plead guilty to second-degree murder had he been properly advised by counsel. First, he points out that the evidence against him at trial was strong and argues no reasonable defendant would have declined a plea offer had he been properly advised that the state only needed to prove willful injury to convict him of first-degree murder

under the felony-murder rule. Second, he references the great disparity between the sentences being a mandatory sentence of life imprisonment without the possibility of parole for first-degree murder and 50 years with the possibility of parole for second-degree murder. Third, he points out that two of his defenses – intoxication and diminished capacity – were limited defenses which would have resulted in a second-degree murder conviction if accepted. He characterizes his other defense (self-defense) as a "Hail Mary pass" given the strong evidence against that theory. He argues that because he was not advised that the state could gain a first-degree murder conviction without proof of intent to kill, it was reasonable for him to proceed to trial with a diminished capacity/intoxication defense to vitiate the intent element. He contends this decision would not have been reasonable if he had been properly advised. Langdeaux also argues that admitting to the conduct that killed the victim while maintaining a defense of "no intent to kill" does not demonstrate an unwillingness to plead guilty to second-degree murder.

Respondent focuses much of its argument on the issue of whether counsels' actions amounted to deficient performance. On the issue of prejudice, respondent identifies evidence that suggests Langdeaux would not have accepted the plea offer if he had been properly advised. It references Saunders's testimony at the PCR trial that he believed Langdeaux rejected the plea agreement because he "felt that he had a good, solid self-defense." Clarity also testified that Langdeaux "was convinced he didn't do anything wrong" and was "angry . . . that he would have to plead guilty and have a mandatory sentence" under the state's plea offer. Langdeaux was "firm" that he did not want to plead to second-degree murder according to Clarity. Clarity also did not believe Langdeaux would have been able to enter a valid plea because "he was adamant that he couldn't answer the questions about the elements" and was "adamant that he didn't do anything wrong." Clarity stated Langdeaux "wouldn't admit . . . that he killed Mr. Krogman without some provocation." Respondent also references Langdeaux's

testimony in which he stated he did not act with malice aforethought. Langdeaux also argued the facts indicated a finding of manslaughter in the briefing for his PCR trial.

Respondent also relies on evidence at Langdeaux's trial. It points out that Langdeaux's defense of self-defense was applicable to the two alternatives of murder in the first degree and murder in the second degree. It argues there is no objective reason to believe a rational individual would accept a plea bargain while maintaining this defense. Respondent contends there is no evidence to suggest Langdeaux ever expressed any lack of confidence in his defense with respect to premeditated murder and Langdeaux has not offered any evidence to suggest he would not have been equally confident in this defense if felony-murder had been fully explained to him. At trial, Langdeaux testified that the victim pushed him, he thought the victim's friend was coming up behind him and he was afraid he was in a two-against-one situation. He stated his intent was not to kill Krogman, but to defend himself. Langdeaux testified he told his friend on the night of the stabbing that it was self-defense and he testified at trial that he still believed that "today."

Respondent further notes that after trial, Langdeaux wrote to the judge and stated he stabbed Krogman "out of fear for myself, because he was coming after me, and I perceived Mr. Johnson on the other side of me, blocking my path. I felt it was necessary to defend myself." Respondent argues that this evidence not only indicates that Langdeaux would not have accepted the plea deal to second-degree murder, but also that he would not have been able to establish the factual basis to enter a valid plea. While the Iowa Court of Appeals did not reference all of this evidence in its ruling, it is still relevant as I must consider "what arguments or theories . . . could have supporte[d] the state court's decision" and then "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Richter*, 131 S. Ct. at 786.

There is little credible, non-conclusory evidence in the record to suggest a reasonable probability that Langdeaux, if properly advised by counsel, would have (a)

accepted the plea offer and (b) provided a factual basis to support that plea. The only evidence to allow this inference (apart from Langdeaux's after-the-fact statement that he "absolutely" would have accepted the plea offer) is the sentencing disparity between first-degree murder and second-degree murder, evidence that the state's case was strong and the district court's finding that Langdeaux had not in fact been properly advised by counsel. *See Wanatee*, 101 F. Supp. 2d at 1205 (stating that evidence of trial counsel's failure to provide proper advice is relevant to the issue of prejudice because the lack of proper advice colors every aspect of the petitioner's conduct prior to the expiration of the plea offer).

Even if I found this evidence to be persuasive, it would not be enough to grant relief under section 2254(d). *See Lyons*, 403 F.3d at 592 ("A federal court may not issue the writ simply because 'it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'"). Under section 2254, "a decision by a state court with respect to any claim that was adjudicated on the merits in State court proceedings is entitled to deference by the federal courts." *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011). "A state court's determination that a claim lacks merits precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Although *Wanatee* bears some similarities to this case, there are also substantial differences. Wanatee was one of several people involved in the assault of Kelton DeCora. He had beaten DeCora with a tire iron, but DeCora died of a stab wound. *Wanatee*, 101 F. Supp.2d at 1193. The prosecutor offered to let Wanatee plead guilty to second-degree murder before filing the trial information. Wanatee rejected the plea offer, was charged and went to trial. He was convicted of first-degree murder, willful injury and assault while participating in a felony. *Id.* He alleged that his counsel provided ineffective assistance by failing to advise him about the implications of the felony-murder rule. *Id.*

The district court found that the Iowa Court of Appeals had used the wrong standard to evaluate prejudice because it considered whether there was a reasonable probability that the jury would have had reasonable doubt concerning his guilt had Wanatee been properly advised and not whether Wanatee would have accepted the plea offer. Therefore, the federal district court reviewed the prejudice question *de novo*.

The court found a formal plea offer had been made and that Wanatee would have accepted the plea offer. It reasoned that Wanatee's defense of intoxication only attempted to negate an element of the crime, and at best would have resulted in a second-degree murder conviction. He also had not lied to avoid liability and there was no indication he would have gone to trial once properly advised because the state's case was strong. The court also considered the great disparity in sentencing between first-degree and second-degree murder. For these reasons, it found Wanatee would have accepted the plea offer had he been properly advised. Finally, the court also found that Wanatee could have performed the plea agreement. It required Wanatee to provide "truthful testimony and testimony or evidence that would likely result in the conviction particularly of the person who did the stabbing." *Id.* at 1208. The court concluded Wanatee could have provided information that would have satisfied these terms. *Id.* at 1212-13.

The main difference between *Wanatee* and this case is the prejudice standard used by the Iowa Court of Appeals. Because the court applied the correct standard here, I must apply AEDPA deference and decide whether its decision resulted in an "unreasonable application of clearly established federal law" instead of reviewing the prejudice issue *de novo* under *Strickland*. Additionally, Langdeaux's defense of self-defense was a complete defense to all of the charges rather than a defense to simply negate an element of the crime. If Langdeaux's defense had been accepted, it would have resulted not in a second-degree murder conviction, but in an acquittal. Also unlike Wanatee, Langdeaux lied to authorities about details of the stabbing to support his self-defense theory. Finally, there is little evidence to suggest Langdeaux would have been able to fulfill the terms of the plea offer because he maintained his self-defense theory

from the moment of his arrest, throughout his trial and sentencing, and even at the PCR trial when he maintained that he did not act with malice aforethought. These differences distinguish this case from *Wanatee*. The Iowa Court of Appeals primarily denied Langdeaux's claim based on the third *Wanatee* question of whether he would have been able to establish the factual basis for a plea to second-degree murder. Langdeaux points out that under Iowa law it is not necessary for a defendant to confess a crime as long as the court is able to find a factual basis in the record as a whole. Doc. No. 27 at 8 (citing *State v. Keene*, 630 N.W.2d 579, 581 (Iowa 2001)). He states it was sufficient that he admitted to stabbing the victim with a knife because malice aforethought can be inferred from use of a dangerous weapon. *See State v. Myers*, 79 N.W.2d 382, 390 (Iowa 1956) ("The use of a deadly and dangerous weapon in a dangerous manner raises a[n] [inference] of malice, and therefore murder in the second degree."). He also states that he could have completed an *Alford* plea.[4]

Respondent argues that for Langdeaux to have plead guilty under the state's offer, he would have had to admit to conduct that satisfied the elements of second-degree murder. *McCarthy v. United States*, 394 U.S. 459, 467 (1969). He also would have had to perform any conditions required by the plea agreement, *see Wanatee*, 101 F. Supp. 2d at 1200 (citing *United States v. Ayd*, 25 F.3d 624, 626 (8th Cir. 1994)), and his plea would have had to have been voluntary and intelligent. *Brady v. United States*, 397, U.S. 742, 748 (1970). The plea deal offered by the state did not allow an *Alford* plea[5] and most of the evidence cited by the Iowa Court of Appeals raises serious doubt as to whether Langdeaux would have been willing to abandon his self-defense theory, admit

---

[4] An *Alford* plea allows a defendant to enter a plea of guilty without admitting guilt. *See North Caroline v. Alford*, 400 U.S. 25, 37 (1970). ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

[5] During the PCR trial, Clarity testified that an *Alford* plea was not offered as part of the plea agreement. He said he had requested that Langdeaux be allowed to enter an *Alford* plea, but the state wanted Langdeaux to take responsibility. Doc. No. 13-24 at 266-68.

to conduct that satisfied the elements of second-degree murder and accept the mandatory sentence associated with the plea deal if he had been properly advised.

It was not unreasonable for the Iowa Court of Appeals to find that Langdeaux would have been unable to establish a factual basis for a plea to second-degree murder. Langdeaux would not admit he killed Krogman without some provocation by the decedent and he insisted he did not act with malice aforethought. *See Sanders v. United States*, 341 F.3d 720, 723 (8th Cir. 2003) ("A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer."). Langdeaux also lied about details of the stabbing in an attempt to avoid liability. *See Wanatee*, 101 F. Supp. 2d at 1206 (citing *Jones v. United States*, 161 F.3d 397, 401 (6th Cir. 1998) where the court found that evidence that the defendant had lied at trial did not support his assertion that he would have accepted a plea offer). Because these are acceptable reasons for finding that a petitioner could not demonstrate a reasonable probability that he would have accepted a plea offer, and been able to provide the factual basis for it, had he been properly advised, I cannot find that they are unreasonable.

In conclusion, the Iowa Court of Appeals identified and applied the correct standard in analyzing whether Langdeaux was prejudiced by the alleged deficient performance by his trial counsel. Based on the record before it, the court reached the reasonable conclusion that Langdeaux had not demonstrated by credible, non-conclusory evidence that there was a reasonable probability he would have accepted the plea offer but for his counsels' errors. While this conclusion may be one upon which "fairminded jurists could disagree," *see Yarborough*, 541 U.S. at 664, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. For these reasons, I find the Iowa Court of Appeals decision on this claim resulted in a reasonable application of federal law.

## 2. *Failure to Investigate*

Langdeaux also argues the Iowa Court of Appeals unreasonably applied federal law in denying his claim of ineffective assistance of counsel for failure to conduct further investigation into Sheriff Rolfes's statement about the victim's reputation for fighting. The Iowa Court of Appeals rejected Langdeaux's argument that his trial counsels' failure to follow up on the sheriff's statement constituted ineffective assistance. It stated, "The problem with this argument is that one of Langdeaux's trial attorneys testified at the postconviction hearing that he did interview the sheriff and, after speaking with him, decided not to call him as a witness because the sheriff would have testified Langdeaux was a troublemaker." *Langdeaux v. State*, 817 N.W.2d 31, at *2 (Iowa Ct. App. 2012) (unpublished table decision). It went on to state that it would not second-guess counsel's strategic decision, which was made after a reasonable investigation, to not call the sheriff as a witness. *Id.* Thus, the court found that counsel's performance was not deficient within the meaning of *Strickland*.

Langdeaux argues this was an unreasonable application of federal law because he asserted self-defense and the sheriff's statement indicated that the victim "would not back down from a fight." Even if it was a tactical decision not to call the sheriff as a witness at trial, Langdeaux argues it was still deficient performance for his counsel to fail to investigate other evidence of the victim's character or reputation based on the sheriff's statement. Langdeaux's trial counsel acknowledged that they did not hire an investigator, instead relying on attorney Saunders to investigate witnesses. Langdeaux argues he was prejudiced by his counsels' failure to investigate and their decision not to call Sheriff Rolfes as a witness or present any other evidence of the victim's character. He states due to these errors there was no evidence to rebut the prosecution's portrayal of the victim as a peaceful person and the jury later told defense counsel that they believed Langdeaux did not intend to kill Krogman.

I find that the Iowa Court of Appeals decision on this claim resulted in a reasonable application of federal law. The petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because, under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell*, 535 U.S. at 698-99. "When § 2254 applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S. Ct. at 788.

*Strickland* itself provides:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 691. The Iowa courts reasonably applied this standard in concluding that Langdeaux's trial counsel had not provided ineffective assistance by failing to conduct further investigation into the victim's character based on the sheriff's statement or failing to call the sheriff as a witness at trial.

The Iowa Court of Appeals considered counsel's testimony that he had interviewed the sheriff and decided not to call him as a witness because he would have testified that Langdeaux was a troublemaker. It was reasonable for the court to give deference to this strategic decision as Sheriff Rolfes's statement may have provided some helpful evidence to Langdeaux, but also evidence that was damaging to his defense. Langdeaux's arguments only suggest an alternative view of the evidence. However, AEDPA does not

allow me to take a "second look" and review Langdeaux's claim directly under *Strickland*. *See Richter*, 131 S. Ct. at 786-87. ("Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."). I am limited to reviewing the Iowa Court of Appeals decision to determine if it resulted in an unreasonable application of federal law. I find that it did not.

## IV. ORDER AND RECOMMENDATION

Based on the foregoing:

1.  Langdeaux's motion to expand the record (Doc. No. 17) is **denied**.

2.  I **respectfully recommend** that Langdeaux's petition pursuant to 28 U.S.C. § 2254 (Doc. No. 1) be **denied**. Objections to this recommendation in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 (8th Cir. 2009).

**IT IS SO ORDERED.**

**DATED** this 20th day of May, 2014.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE