# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

JAMES WILLIAM LANGDEAUX,

        Petitioner,

vs.

MARK LUND,

        Respondent.

No. C12-4081-MWB

**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HEABEAS CORPUS**

---

## TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ............................................................ 3
  A. Factual Background ......................................................................... 3
  B. Procedural Background .................................................................... 4
    1. State court proceedings ............................................................. 4
      a. Trial and appeal ................................................................ 4
      b. Post-conviction relief applications ............................... 5
    2. Federal proceedings .............................................................. 14

II. LEGAL ANALYSIS ................................................................................. 15
  A. Standard Of Review ...................................................................... 15
  B. Federal Habeas Relief ................................................................. 19
    1. "Exhausted" and "adjudicated" claims ................................. 20
      a. The "exhaustion" and "adjudication" requirements ..................................................................... 20
      b. Limitations on relief on "exhausted" claims ............... 22
    2. The § 2254(d)(1) standards ................................................... 23
      a. The "contrary to" clause .............................................. 23
      b. The "unreasonable application" clause ....................... 24
      c. The effect of § 2254(d)(1) deficiencies in the state court decision ......................................................... 26
    3. The § 2254(d)(2) standards ................................................... 27

        4.    *De novo review of issues not reached by the state court* .................................................................................... 27

   C.   *"Clearly Established Federal Law" Regarding Ineffective Assistance of Counsel* .......................................................... 28

        1.    *The Strickland standard* ................................................ 28

        2.    *Strickland's "deficient performance" prong* ......................... 30

        3.    *Strickland's "prejudice" prong* ...................................... 32

   D.   *Langdeaux's objections* .......................................................... 33

        1.    *Whether Landeaux would have accepted plea offer* ............... 33

        2.    *Whether Langdeaux could establish a factual basis to support plea* ................................................................ 35

III.   *CERTIFICATE OF APPEALABILITY* ............................................. 37

IV.   *CONCLUSION* ............................................................................. 37

Petitioner James William Langdeaux's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody is before me pursuant to a Report and Recommendation of United States Magistrate Judge Leonard T. Strand recommending that the petition be denied. Langdeaux has filed objections to the Report and Recommendation. I now consider whether to accept, reject, or modify Judge Strand's Report and Recommendation in light of Langdeaux's objections.

# I.    INTRODUCTION AND BACKGROUND

## A.    Factual Background

Absent rebuttal by clear and convincing evidence, I must presume that any factual determinations made by a state court in a state prisoner's criminal and post-conviction relief cases were correct. 28 U.S.C. § 2254(e)(1); *see Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009) (a federal court must deem factual findings by the state court to be presumptively correct, subject to disturbance only if proven to be incorrect by clear and convincing evidence). Judge Strand summarized the facts of the crime underlying Langdeaux's conviction, as follows:

> On the night of August 21, 1987, Langdeaux and a friend went to the Windjammer, a bar in Arnold's Park, Iowa, after a night of drinking. At some point, Langdeaux approached a table where Russell Johnson and Duane Krogman were sitting. Neither Johnson nor Krogman knew Langdeaux, but Langdeaux began talking with Krogman. After a while, Krogman and Johnson asked Langdeaux to leave. He did not leave right away, but eventually got up and backhanded Krogman on the face before walking away. Krogman went to look for Langdeaux outside. However, Johnson found Langdeaux inside the bar, grabbed his arm and said they did not want any trouble. Langdeaux pulled out a knife and put it to Johnson's neck. Johnson let Langdeaux go and Langdeaux walked away. Johnson went to find Krogman so they could leave the bar.

> Meanwhile, Krogman had re-entered the bar and approached Langdeaux. The two began to argue. Witnesses saw Langdeaux grab Krogman, make a quick thrust to Krogman's stomach and run out of the bar. Someone yelled that he had been stabbed. Several patrons and employees ran out of the bar to chase Langdeaux. They caught up with him about a block away and told Langdeaux to drop the knife,

> which he did. They took Langdeaux back to the bar and
> turned him over to the police. Krogman suffered a single stab
> wound that severed major blood vessels in his liver and died
> of internal bleeding.

Report and Recommendation at 2-3. No objections have been made to Judge Strand's factual findings. After reviewing the record, I adopt all of Judge Strand's factual findings.

## B. Procedural Background

### 1. State court proceedings
#### a. Trial and appeal

Langdeaux was charged with first-degree murder under the alternative theories of premeditated murder or while participating in a forcible felony. He was also charged with going armed with intent. A week before trial, the state offered a plea deal for Langdeaux to plead guilty to second degree murder. Langdeaux rejected the proposed plea and proceeded to trial.

At trial, Langdeaux offered self-defense and intoxication defenses. Langdeaux testified that he felt threatened by Krogman and Johnson and pulled his knife in order to defend himself. On March 31, 1988, the jury convicted Langdeaux of murder in the first degree and going armed with intent. Langdeaux was subsequently sentenced to a life term of imprisonment without parole.

Langdeaux appealed his convictions to the Iowa Supreme Court, which transferred the case to the Iowa Court of Appeals. On appeal, Langdeaux argued that his trial counsel provided ineffective assistance of counsel in two respects. First, he challenged his trial counsel's failure to timely object to a felony murder jury instruction with willful injury as the underlying felony. Second, he contended that his trial counsel failed to challenge

4

one of the jurors for cause. On August 23, 1989, the Iowa Court of Appeals affirmed Langdeaux's convictions. *See State v. Langdeaux*, Sup. Ct. No. 88-852, at *8, 455 N.W.2d 301 (Iowa Ct. App. Aug. 23, 1989) (unpublished table decision). The court of appeals noted that, although ineffective assistance claims are generally reserved for postconviction proceedings, *State v. Ueding*, 400 N.W.2d 550, 553 (Iowa 1987), Langdeaux's claims could be resolved on direct appeal because the record adequately presented them. *Langdeaux*, Sup. Ct. No. 88-852, at *3, 455 N.W.2d 301. The court of appeals concluded that Langdeaux's trial counsel's actions were reasonable and within the range of normal competency and denied Langdeaux's claims. *Id*. at *5,* 8, 455 N.W.2d 301.

### b. *Post-conviction relief applications*

Langdeaux proceeded to bring a series of applications for post-conviction relief ("PCR") in the Iowa courts. Langdeaux brought his first PCR application on May 30, 1990. The Iowa district court dismissed the application, concluding that the issue of ineffective assistance of counsel raised in it had been decided on direct appeal. Langdeaux appealed to the Iowa Supreme Court, which transferred the case to the Iowa Court of Appeals. The Iowa Court of Appeals found that not all of the issues had been decided on direct appeal, but nonetheless affirmed because the record was sufficient to permit it to decide the issue raised in the application. *Langdeaux v. State*, Sup. Ct. No. 90-1160, at *3, 485 N.W.2d 107 (Iowa Ct. App. Nov. 26, 1991) (unpublished table decision). The court of appeals concluded that Langdeaux's claim, that his trial counsel was ineffective in failing to learn the underlying forcible felony prior to trial, failed because his trial counsel knew before trial that the prosecution intended to rely on willful injury as the underlying felony. *Id*., 485 N.W.2d 107.

Langdeaux brought a second PCR application on May 19, 1992. The state filed a

5

motion to dismiss, which was summarily granted without notice or hearing. Langdeaux appealed to the Iowa Supreme Court. The Iowa Supreme Court reversed and remanded to the district court with instructions to conduct a hearing on the motion to dismiss. Langdeaux subsequently sought appointed counsel and filed a *pro se* motion to amend. The Iowa district court appointed counsel for Langdeaux. Langdeaux's PCR counsel then sought to amend Langdeaux's second PCR application. The state, in turn, renewed its motion to dismiss. The district court interpreted the Iowa Supreme Court's remand order to limit its consideration to the original motion to dismiss. Following a hearing, the court granted the state's motion to dismiss and denied all other pending motions as moot. Langdeaux again appealed. Counsel was appointed for Langdeaux. On June 27, 1995, the Iowa Court of Appeals reversed and remanded with instructions for the district court to consider Langdeaux's various motions and the state's renewed motion to dismiss.

Nothing further occurred until January 31, 1997, when Langdeaux filed a *pro se* supplemental application for post-conviction relief and a motion to personally appear at all further proceedings in his case. The state filed a motion to strike the supplemental application and resisted the motion to personally appear. A hearing on all pending motions was held on April 21, 1997, including a motion for discovery filed by Langdeaux. The following day, the district court granted most of Langdeaux's discovery motion, denied the state's motion to strike his supplemental application for post-conviction relief, and denied Langdeaux's motion to personally appear. The state filed a motion to reconsider Langdeaux's discovery motion.

A hearing on the state's motion to reconsider was not scheduled until September 15, 2000, but was then continued repeatedly at Langdeaux's PCR counsel's request. Ultimately, three years passed with no action. On September 22, 2004, Langdeaux filed a *pro se* motion for sanctions against the state for failing to respond to his discovery requests. On October 29, 2004, Langdeaux filed a *pro se* motion for default requesting

that his motion for sanctions be granted due to the state's failure to timely resist his motion. The state filed a resistance to Langdeaux's motion, arguing that any delay was the result of continuances sought by Langdeaux's PCR counsel. On August 29, 2005, the district court granted the state's motion to reconsider and issued a new discovery order.

Langdeaux subsequently filed a *pro se* amended PCR application on July 30, 2007, and his PCR counsel filed a motion to amend on August 1, 2007, along with a supporting brief. The state, in turn, filed a motion for summary disposition. The Iowa district court held a hearing and granted the state's motion in its entirety on March 31, 2008. Both Langdeaux and his attorney filed motions to amend, enlarge, and reconsider the ruling. On July 8, 2008, the district court found there were factual issues on two of Langdeaux's claims: (1) whether Langdeaux's trial counsel discussed with him the felony-murder rule as it elated to willful injury as the predicate felony and (2) whether his attorneys failed to more actively pursue favorable testimony from the sheriff.

Langdeaux, through counsel, filed a motion to amend his petition to add a claim that his continued incarceration was unconstitutional under the Iowa Supreme Court's decision in *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006).[1] The Iowa district court granted Langdeaux's motion to amend. A PCR hearing subsequently began on February 3, 2009, but did not conclude until November 12, 2009. At the hearing, the Iowa district court considered the following three issues:

A. Whether Langdeaux's Trial Counsel Were Ineffective In failing To Advise Langdeaux About

---

[1] In *Heemstra*, filed after Langdeaux's direct appeal was completed, the Iowa Supreme Court held "if the act causing willful injury is the same act that causes the victim's death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes." *Heemstra*, 721 N.W.2d at 558.

Iowa's Felony Murder Rule As It Applied To His Case?

. . . .

B. Whether Langdeaux's Trial Counsel Rendered Ineffective Assistance In Failing To Further Investigate Statements Made By Osceola County Sheriff Robert Rolfes In His Statement To DCI Agent Lubkeman And/or In Failing To Call Sheriff Rolfes To Testify Concerning The Content Of His Statement During The Underlying Criminal Trial?

. . . .

C. Whether Langdeaux's Continued Incarceration Following The Supreme Court Of Iowa's Decision In The case Of *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006) Abrogating Portions Of Iowa's Felony Murder Rule Constitutes Cruel And Unusual Punishment.

Ruling on PCR Application at 28, 36, and 40 (Doc. No. 13-24 at 338, 346, and 350).

The Iowa district court ruled on August 20, 2010. First, the district court found that Langdeaux's trial counsel performed below the standards required of a reasonably competent attorney. *Id.* at 32 (Doc. No. 13-24 at 342). Specifically, the court found that trial counsel did not advise him "about the application and implications of the felony murder rule to his case." *Id.* The court noted that there was "a complete lack of any evidence" that trial counsel had explained the felony-murder rule to Langdeaux. *Id.* at 20 (Doc. No. 13-24 at 330). Moreover, while the state had clearly indicated in its trial brief that willful injury was the predicate forcible felony, trial counsel's oral motion for judgment of acquittal and motion to dismiss at the end of the state's case demonstrated trial counsel's confusion about that issue. *Id.* at 21 (Doc. No. 13-24 at 331). The court also noted that, while trial counsel had made a record with Langdeaux concerning a plea offer made the week before trial, under which Langdeaux could have plead guilty to

second-degree murder, that record made no reference to the felony-murder rule.  *Id.* at 21-22 (Doc. No. 13-24 at 331-32).

After finding that Langdeaux had established deficient performance by his trial counsel, the district court analyzed whether Langdeaux demonstrated prejudice as a result of that deficient performance.  The district court considered the following three questions based on *Wanatee v. Ault*, 101 F. Supp. 2d 1189, 1200-01 (N.D. Iowa 2000):

> (1) Whether a plea agreement was formally offered by the state; (2) Whether Langdeaux would have accepted that plea offer, if he had been properly advised by trial counsel about the law applicable to the charges against him; and (3) Whether Langdeaux could have performed the agreement, if he had accepted it?

*Id.* at 32 (Doc. No. 13-24 at 342).  On the first question, the district court found that a plea agreement had been formally offered the week before trial.  Considering the second question, the district court applied a subjective standard and considered whether there was other credible, non-conclusory evidence that Langdeaux would have pleaded guilty had he been properly advised.  The district court found that there was insufficient evidence to conclude Langdeaux would have accepted the plea agreement had he been properly advised by his trial counsel.  On one hand, the district court considered Langdeaux's claim that he would have accepted the plea along with the disparity in sentencing exposure between first-degree and second-degree murder.  However, the district court found this evidence was outweighed by "the fact that the record from the underlying criminal case lacks any evidence the district court can find that Langdeaux would have acknowledged his guilt and pled guilty to any charge prior to trial." *Id.* at 34 (Doc. No. 13-24 at 344).  Specifically, the district court pointed out that Langdeaux maintained that he had acted in self-defense immediately following his arrest, throughout his testimony at trial, and even in the letter he wrote to the sentencing judge.  *Id.*  The

district court also noted that Langdeaux's other defenses of insanity, diminished responsibility, and intoxication were defenses to both alternatives of the first-degree murder charge. The district court also found it significant that Langdeaux had initially lied to the officers about the source of the knife. The district court observed that, while Langdeaux had subsequently retracted his lie, it was "left with the impression that Langdeaux was willing to go so far as to lie during the underlying criminal proceedings to avoid responsibility, and the possibility of being convicted." *Id.* at 35 (Doc. No. 13-24 at 345). Thus, the district court found that Langdeaux had "failed to satisfy the prejudice prong of the *Strickland* test." *Id.*

For "the sake of thoroughness," the district court went on to consider the third question and concluded that Langdeaux had not proven that he would have performed under the plea offer, if he had accepted it. The district court noted that the state would not allow Langdeaux to enter an *Alford* plea, so Langdeaux would have had to provide the court with a factual basis that

> (1) on August 22, 1987, he stabbed Duane Krogman; (2) that Krogman died as a result of being stabbed; and (3) that Langdeaux acted with malice aforethought, which would have required that he acted with 'a fixed purpose or design to do some physical harm to [Krogman] which [existed] before the act [was] committed.'

*Id.* The district court went on to find that, for the same reasons it had found that Langdeaux would not have accepted the guilty plea, Langdeaux would not have been able to provide the required factual basis for the district court to have accepted a guilty plea to second-degree murder. *Id.* Therefore, the district court concluded that Langdeaux had failed to meet his burden of proving his first claim of ineffective assistance of counsel.

The district court turned next to consider Langdeaux's second ineffective assistance of counsel claim, that his attorneys should have done more with a statement

provided by Sheriff Rolfes concerning the victim's character. Agent Roy Lubkeman summarized Sheriff Rolfes's statement in his investigative report as follows:

> Sheriff ROLFES stated that he had never had trouble with DUANE and knew him quite well. He stated that DUANE could be aggressive if he wanted to and he wouldn't back down from a fight. ROLFES also stated that DUANE didn't go out looking for fights, however. ROLFES also stated that DUANE was good at "bullshitting" with people. He stated DUANE was a good worker. He further stated that there were a few family problems in DUANE's family, but those weren't anything serious. He said that at times DUANE had worked on farms and at elevators for quite a long time and had a good working record. At the time of his death DUANE was working at Chase Bag Company in Sheldon, Iowa. ROLFES stated that DUANE was a typical Iowa kid with a typical background. He stated that DUANE's father, KENNEY, could be pretty hard on the family. No further information was discussed in regard to DUANE KROGMAN, and the interview was terminated.

Petitioner's PCR Exhibit 2 (Doc. No. 13-24 at 273).

The court found Langdeaux had not established that his trial counsel performed below the standards required of a reasonably competent attorney by failing to conduct further investigation based on this statement or call Sheriff Rolfes as a witness in the trial. Ruling on PCR Application at 38 (Doc. No. 13-24 at 348). First, the court noted that trial counsel had spoken to Sheriff Rolfes and had made the tactical decision to not make Krogman's character an issue at trial or call Sheriff Rolfes as a witness at trial. Trial counsel's decision was based, in part, on counsel's prior dealings with Sheriff Rolfes in other cases and the fact that the state had multiple witnesses who would testify that Krogman was not the aggressor when Langdeaux stabbed him. The court also found

11

Langdeaux had failed to establish any prejudice from this alleged error. *Id.* at 40 (Doc. No. 13-24 at 350).

Finally, the district court rejected Langdeaux's third claim, that his continued sentence of life imprisonment without the possibility of parole following the abrogation of the portion of Iowa's felony murder law under which he was convicted constituted cruel and unusual punishment prohibited by both the United States Constitution and the Iowa Constitution.[2]

Langdeaux appealed. On Appeal, Langdeaux argued, *inter alia*, that his trial counsel provided ineffective assistance in failing to investigate a witness's statement, and in providing inadequate advice about a plea offer. See *Langdeaux v. State*, 817 N.W.2d 31, 2012 WL 1439077, at *2 (Iowa Ct. App. Apr. 25, 2012) (unpublished table decision). On the first issue, Langdeaux's argument regarding his trial counsels' failure to further investigate Sheriff Rolfes's statement, the Iowa Court of Appeals noted that one of Langdeaux's attorneys testified he had interviewed the sheriff. After that interview, trial counsel made a tactical decision not to call him as a witness because "the sheriff would have testified that Langdeaux was a troublemaker." *Id.* The court of appeals held it would not second-guess trial counsels' strategic decision, which it found was made after a reasonable investigation. *Id.*

On the second issue, the court of appeals found that Langdeaux had not shown prejudice from his trial counsels' alleged error in failing to advise him about the felony-murder rule and how it applied to his case, specifically regarding the state's plea offer. The court noted that trial counsel testified at the PCR hearing that:

> Langdeaux "was convinced he didn't do anything wrong." He
> remembered Langdeaux was angry "that he would have to

---

[2]Because only the first two issues are being raised by Langdeaux in his § 2254 petition, further discussion of the third issue is unnecessary.

> plead guilty and have a mandatory sentence. . . . He was firm
> that he didn't want to do it."

*Id.*, 2012 WL 1439077, at *3. From this the court of appeals concluded that Langdeaux would not have accepted the plea offer. The court of appeals also concluded that Langdeaux would have been unable to establish a factual basis for a plea to second-degree murder, pointing to trial counsel's testimony that, "'[Langdeaux] wouldn't admit . . . that he killed Mr. Krogman without some provocation by the decedent. And the plea, in my opinion . . . would have been a shambles. . . . [H]e was just adamant that he didn't do anything wrong.'" *Id.*

The court of appeals also considered the fact that Langdeaux had lied about the details of the victim's supposed attack on him, lying to the police about where he got the knife and that Krogman's friend had ripped his shirt. The court of appeals deemed this action relevant because the *Wanatee* decision considered the fact that the defendant did not lie to avoid liability in determining whether he would have pleaded guilty if he had been properly advised. *See Wanatee*, 101 F. Supp. 2d at 1206. The court of appeals further noted Langdeaux's statement to the sentencing judge that he had acted in self-defense and his statement, at the PCR hearing, that he did not believe he had acted with malice aforethought. Finally, the court of appeals stated that, if the jury had accepted Langdeaux's justification defense, he would have been acquitted of not only first-degree murder, but also second-degree murder and willful injury. The court of appeals found this fact "seriously undercuts Langdeaux's after-the-fact assertion that he would have accepted the State's offer and pleaded guilty to second-degree murder if he had been informed of the felony-murder rule." *Id.*, 2012 WL 1439077, at *4. Thus, the Iowa Court of Appeals affirmed the district court's denial of this claim.

## 2. *Federal proceedings*

On September 4, 2012, Langdeaux filed a *pro se* petition under 28 U.S.C. § 2254. In his petition, Langdeaux challenged his conviction on the following four grounds: (1) ineffective assistance of trial counsel for failing to properly advise him of the law of his case; (2) ineffective assistance of counsel for failing to properly investigate the sheriff's statement and use it to impeach witnesses, (3) ineffective assistance of counsel by his PCR counsel for failing to argue that the *Heemstra* decision retroactively applied to his case; and (4) ineffective assistance of trial counsel for failing to strike a juror for cause. Langdeaux concedes in his brief that the last two claims were not properly preserved because they were not submitted to the Iowa Supreme Court in an application for further review. Therefore, only Langdeaux's first two claims are properly before me.

The case was referred to United States Magistrate Judge Leonard T. Strand pursuant to 28 U.S.C. § 636(b)(1)(B). Judge Strand filed a thorough and comprehensive Report and Recommendation in which he recommended denial of Langdeaux's petition. In his Report and Recommendation, Judge Strand concluded that the Iowa Court of Appeals correctly identified *Strickland v. Washington*, 466 U.S. 668 (1984), as the governing rule. Judge Strand further determined that the Iowa Court of Appeals correctly identified and applied a subjective test for determining prejudice based on deficient performance at the plea negotiation stage, rejecting Langdeaux's argument that the proper test is objective. Judge Strand next distinguished this case from the decision in *Wanatee.* Judge Stand pointed out that, unlike *Wanatee,* where the review was *de novo,* here, because the Iowa Court of Appeals applied the correct standard for determining prejudice, he was required to apply the deferential standard of review from the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA) and decide whether the Iowa Court of Appeals's decision resulted in an "'unreasonable application of clearly established federal law.'" Report and Recommendation at 28. Judge Strand determined that the Iowa Court

of Appeals reasonably applied *Strickland* in holding that Langdeaux had not demonstrated prejudice resulting from his trial counsels' alleged deficient performance. In reaching this conclusion, Judge Strand noted that there was "little credible, non-conclusory evidence in the record to suggest a reasonable probability that Langdeaux, if properly advised by trial counsel, would have (a) accepted the plea offer and (b) provided a factual basis to support that plea." Report and Recommendation at 26-27. He went on to point out that even if he found that evidence to be persuasive, it would not be enough to grant relief under § 2254(d) because the Iowa Court of Appeals's determination was one which fairminded jurists could disagree on the correctness of the decision. Finally, Judge Strand found that the Iowa Court of Appeals did not unreasonably apply federal law in denying Langdeaux's ineffective assistance of counsel claim for failure to conduct further investigation into Sheriff Rolfes's statement about the victim's reputation for fighting. Thus, Judge Strand recommended that I deny Langdeaux's § 2254 petition.

Langdeaux has filed objections to Judge Strand's Report and Recommendation. He argues that Judge Strand erred in finding no credible non-conclusory evidence that Langdeaux would have accepted a plea of guilty to second degree murder. Langdeaux also contends that Judge Strand erred in finding that the Iowa courts' determination that he would have been unable to establish a factual basis for a guilty plea to second degree murder was not unreasonable. Respondent has not filed a reply brief to Langdeaux's objections.

## II.    LEGAL ANALYSIS

### A.    Standard Of Review

Before considering whether or not to accept Judge Strand's Report and Recommendation, I will first set out my standard of review. The applicable statute

provides for *de novo* review by the district judge of a magistrate judge's report and recommendation, when objections are made, as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). Thus, "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The United States Supreme Court has explained that, although the statute provides for review when objections are made, the statutory standard does not preclude review by the district court in other circumstances:

> [W]hile the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas*, 474 U.S. at 154. Thus, the specific standard of review may depend upon whether or not a party has objected to portions of the report and recommendation. I will explain what triggers each specific standard of review in a little more detail.

If a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination *of those portions of the report or specified proposed findings or recommendations to which objection is made.*" 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, to trigger *de novo* review, "objections must

be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record.").

When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing on the motion, nor did he consider oral arguments on the motion. Instead, he considered only the parties' written submissions, and I have done the same.

In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). Indeed, *Thomas* suggests that no review at all is required. *Id.* ("We are therefore not persuaded that [§ 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, a district court may also review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* at 154. This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). Also, the Eighth Circuit Court of Appeals has indicated that, at a minimum, a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). Review for clear error, even when no objection has been made, is also consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although neither the Supreme Court nor the Eighth Circuit Court of Appeals has explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

I will review Judge Strand's Report and Recommendation with these standards in mind.

## B.    Federal Habeas Relief

Before reviewing the Report and Recommendation, I will first consider the standards for federal *habeas* relief from a state conviction. I note that the United States Supreme Court has recognized that "[t]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." *Harris v. Nelson*, 394 U.S. 286, 292 (1969). Indeed, "[h]abeas corpus is one of the precious heritages of Anglo-American civilization." *Fay v. Noia*, 372 U.S. 391, 441 (1963), *overruled on other grounds, Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also McClesky v. Zant*, 499 U.S. 467, 496 (1991) ("The writ of habeas corpus is one of the centerpieces of our liberties.").[3]    Nevertheless, it was not until 1867 that Congress extended federal *habeas corpus* to prisoners held in state custody. *See McClesky*, 499 U.S. at 478.[4]    "[T]he leading purpose of federal habeas review [in the case of a state prisoner] is to 'ensur[e] that state courts conduct criminal

---

[3] The Supreme Court has recognized that the power to issue a writ of *habeas corpus* is not necessarily an unalloyed good:

> "But the writ has potentialities for evil as well as for good. Abuse of the writ may undermine the orderly administration of justice and therefore weaken the forces of authority that are essential for civilization." *Brown v. Allen*, [ ] 344 U.S. [443,] 512, 73 S. Ct., at 449 [(1953)] (opinion of Frankfurter, J.).

*McClesky*, 499 U.S. at 498.

[4] Some of the history of federal *habeas* relief, before and after it was extended to state prisoners, is set out in *Johnson v. United States*, 860 F. Supp. 2d 663, 737 n.23 (N.D. Iowa 2012).

19

proceedings in accordance with the [United States] Constitution as interpreted at the time of th[ose] proceedings.'" *Graham v. Collins*, 506 U.S. 561, 467 (1993) (quoting *Saffle v. Parks*, 494 U.S. 484, 488 (1990)).

Notwithstanding its importance, I also note that the United States Supreme Court has explained that "the writ of habeas corpus has historically been regarded as an extraordinary remedy." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). Thus, various justices of the Supreme Court have cautioned that "upsetting the finality of judgment should be countenanced only in rare instances." *O'Neal v. McAninch*, 513 U.S. 432, 447 (1995) (Thomas, J., joined by Rehnquist, C.J., and Scalia, J., dissenting). Furthermore, "Congress enacted the AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and to further the principles of comity, finality, and federalism." *See Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal quotation marks and citations omitted). Therefore, "[t]o obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Metrish v. Lancaster*, 133 S. Ct. 1781, 1783 (2013) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011)).

In light of these concerns, as explained more fully, below, since the passage of AEDPA, *habeas* review by the federal courts of a state court conviction and the state courts' denial of post-conviction relief is limited and, at least ordinarily, deferential.

### 1.    *"Exhausted" and "adjudicated" claims*

### a.    *The "exhaustion" and "adjudication" requirements*

The ability of the federal courts to grant habeas relief to a state prisoner depends, in the first instance, on whether or not the claim before the federal court has been "exhausted" in the state courts—a requirement found in § 2254(b) long before the

AEDPA was enacted. As the Supreme Court explained four decades ago, "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity." *Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973).

More specifically, the AEDPA provides that federal habeas relief cannot be granted to a person in state custody, unless it appears that "the applicant has exhausted the remedies available in the courts of the State," or "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus [in the state court] must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray v. Netherland*, 516 U.S. 152, 162-63 (1996) (citing this rule as the holding of *Picard v. Connor*, 404 U.S. 270 (1971)). A federal court has the authority to deny relief on the merits on an unexhausted claim, see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."), but it cannot grant relief on such a claim. *Id.* at § 2254(b)(1). At least theoretically, "once a state prisoner arrives in federal court with his petition for habeas corpus [asserting properly exhausted claims], the federal habeas statute provides for a swift, flexible, and summary determination of his claim." *Preiser*, 411 U.S. at 495 (citing 28 U.S.C. § 2243, which provides for preliminary review of a state prisoner's petition to determine whether it appears from the application that the petitioner is not entitled to relief).

As to the "adjudicated on the merits" requirement, the Supreme Court has held "that, when a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to

rebuttal) that the federal claim was adjudicated on the merits." *Johnson*, 1333 S. Ct. at 1091 (emphasis in the original) (citing *Harrington v. Richter*, 131 S. Ct. 770 (2011)). Similarly, "when a defendant convicted in state court attempts to raise a federal claim, either on direct appeal or in a collateral state proceeding, and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question," the Supreme Court has held "that the federal claim at issue . . . must be presumed to have been adjudicated on the merits by the [state] courts," and that, if the presumption is not adequately rebutted, "the restrictive standard of review set out in § 2254(d)(2) consequently applies." *Id.* at 1091-92.

### b. Limitations on relief on "exhausted" claims

If a claim is "exhausted," then the ability of a federal court to grant *habeas* relief depends on the nature of the alleged error by the state courts. As the Supreme Court explained, "One of the methods Congress used to advance the[ ] objectives [of AEDPA] was the adoption of an amended 28 U.S.C. § 2254(d)," which "places 'new constraint[s] on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.'" *Woodford*, 538 U.S. at 206 (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[Supreme Court] cases make clear that AEDPA in general and § 2254(d) in particular focus in large measure on revising the standards used for evaluating the merits of a habeas application." *Id.*

Specifically, as the Supreme Court more recently explained, the power of the federal court to grant relief to a person in state custody on a properly exhausted claim is limited, as follows:

> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State

court." 28 U.S.C. § 2254(d). Specifically, if a claim has been "adjudicated on the merits in State court," a federal habeas court may not grant relief unless "the adjudication of the claim—

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."
> *Ibid.*

Because the requirements of § 2254(d) are difficult to meet, it is important whether a federal claim was "adjudicated on the merits in State court."

*Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013). This is a "difficult to meet . . . and highly deferential standard." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks omitted). This highly deferential standard is appropriate, "because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (internal quotation marks and citations omitted).

2.    ***The § 2254(d(1) standards***

    a.    ***The "contrary to" clause***

A state court decision is "contrary to" clearly established federal law, within the meaning of § 2254(d)(1), "if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1390 (2012) (quoting *Williams*, 529 U.S. at 405)). "A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of

facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 406. A federal court's belief that it might have reached a different result is not enough to show that the state court decision was "contrary to" established federal law, where the state court applied the correct standard under established Supreme Court law. *Id.*

### b.    The "unreasonable application" clause

A state court's decision involves an "unreasonable application" of federal law, within the meaning of § 2254(d)(1), if "'there was no reasonable basis for' the [state court's] decision." *Cullen*, 131 S. Ct. at 1402 (quoting *Richter*, 131 S. Ct. at 786). Thus, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Richter*, 131 S. Ct. at 785 (emphasis in the original) (quoting *Williams*, 529 U.S. at 410).

> [T]his Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." [*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)]. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ----, ----, 129 S. Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Richter*, 131 S. Ct. at 786. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

Nevertheless, where the rule itself is clearly established, the Supreme Court has recognized two ways in which it can be unreasonably applied:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court

identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Williams*, 529 U.S. at 407 (O'Connor, J., writing for the majority). The Supreme Court recognized that there were "some problems of precision" with "unreasonable application" as to extension or failure to extend a clearly established rule to a new context:

> *Just as it is sometimes difficult to distinguish a mixed question of law and fact from a question of fact, it will often be difficult to identify separately those state-court decisions that involve an unreasonable application of a legal principle (or an unreasonable failure to apply a legal principle) to a new context.* Indeed, on the one hand, in some cases it will be hard to distinguish a decision involving an unreasonable extension of a legal principle from a decision involving an unreasonable application of law to facts. On the other hand, in many of the same cases it will also be difficult to distinguish a decision involving an unreasonable extension of a legal principle from a decision that "arrives at a conclusion opposite to that reached by this Court on a question of law," *supra*, at 1519. Today's case does not require us to decide how such "extension of legal principle" cases should be treated under § 2254(d)(1). *For now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's "unreasonable application" clause.*

*Williams*, 529 U.S. at 408-09 (O'Connor, J., writing for the majority) (emphasis added).

### c.   The effect of § 2254(d)(1) deficiencies in the state court decision

Even if a petitioner establishes that the state court's determination was "contrary to" or an "unreasonable application of" federal law, within the meaning of § 2254(d)(1), that determination does not, standing alone, entitle the petitioner to relief. Rather, it only entitles the petitioner to *de novo* consideration by the federal court of his or her *underlying constitutional claim* for post-conviction or *habeas* relief. *See Johnson*, 133 S. Ct. at 1097 ("Even while leaving 'primary responsibility' for adjudicating federal claims to the States, AEDPA permits de novo review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent." (internal citations omitted)); *Lafler*, 132 S. Ct. at 1390-91 (holding that, where the state court's decision was "contrary to" clearly established federal law, because it failed to apply the *Strickland* standards to an ineffective assistance of counsel claim, the federal court "can determine the principles necessary to grant relief" and apply them to the facts of the case); *Richter*, 131 S. Ct. at 770 (stating that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law"); *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (stating that, when the state court's adjudication was "contrary to" federal law, within the meaning of § 2254(d)(1), "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (performing the analysis required under *Strickland*'s "prejudice" prong without deferring to the state court's decision, because the state court's resolution of *Strickland*'s "deficient performance" prong involved an "unreasonable application" of federal law, and the state court had considered the "deficient performance" prong dispositive).

### 3. The § 2254(d)(2) standards

Just as the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have "independent meaning," *see Williams*, 529 U.S. at 405, the "unreasonable determination" clause of § 2254(d)(2) also involves separate considerations, related not to established federal law, but to sufficiency of the evidence. Section 2254(d)(2) provides for relief from a state court denial of post-conviction relief, if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Again, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (applying this question to both the "unreasonable application" clause in § 2254(d)(1) and the "unreasonable determination" clause in § 2254(d)(2)). Thus, the federal court must "presume the [state] court's factual findings to be sound unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). "The standard is demanding but not insatiable; as [the Court] said . . . , '[d]eference does not by definition preclude relief.'" *Id.* (quoting its prior decision in the same case, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### 4. De novo review of issues not reached by the state court

A federal court may also review *de novo* an element of a state prisoner's constitutional claim that the state court did not reach at all, because the state court found another element to be dispositive of the prisoner's claim. *See Porter v. McCuollum*, 558 U.S. 30, 38 (2009) (stating, "Because the state court did not decide whether Porter's counsel was deficient, we review *this element* of Porter's *Strickland* claim *de novo*," and also finding that the state court's determination that there was no prejudice was an unreasonable application of *Strickland* (emphasis added)); *Cone v. Bell*, 556 U.S. 449,

472 (2009) (reviewing *de novo* the state prisoner's *Brady* claim, because the state courts did not reach the merits of that claim); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, App. 265, 272–273, and so we examine *this element* of the *Strickland* claim *de novo*." (emphasis added)); *Wiggins*, 539 U.S. at 534 ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence. In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.").

### C. *"Clearly Established Federal Law" Regarding Ineffective Assistance of Counsel*

Langdeaux's objections to Judge Strand's Report and Recommendation all relate to Judge Strand's analysis of the state court's disposition of his constitutional claim of ineffective assistance of counsel. Before considering these objections, I must first "identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall*, ___ U.S. at ___, 133 S. Ct. at 1449 (explaining that this is the starting point for cases subject to § 2254(d)(1)); *Williams*, 529 U.S. at 412 (same); *Knowles*, 556 U.S. at 122 (same).

### 1. *The Strickland standard*

The Supreme Court has explained that "[t]he right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1404 (2012) (citing *Strickland*, 466 U.S. at 686). In the context of a claim of ineffective assistance of counsel, the Supreme Court has concluded that "the rule set forth in

*Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 391. More specifically, "[t]o prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052." *Wong v. Belmontes*, 558 U.S. 15, 16 (2009) *(per curiam)*. The Supreme Court has explained that

> "'[s]urmounting *Strickland*'s high bar is never an easy task.'" *Richter, supra*, at ----, 131 S. Ct., at 788 (quoting *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S. Ct. 1473, 1484, 176 L.Ed.2d 284, (2010)). The *Strickland* standard must be applied with "scrupulous care." *Richter, supra*, at ----, 131 S. Ct., at 788.

*Cullen*, 131 S. Ct. at 1408.

Although the *Strickland* analysis is "clearly established federal law," and the petitioner must prove both prongs of that analysis to prevail, the Supreme Court does not necessarily require consideration of *both* prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order. As the Court explained in *Strickland*,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[5]

I will consider the two prongs of the *Strickland* analysis in a little more detail, before turning to analysis of Langdeaux's objections to the Report and Recommendation.

### 2. *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*, 132 S. Ct. at 1384 (quoting *Hill v. Lockart*, 474 U.S. 52, 57 (1985), in turn quoting *Strickland*, 466 U.S. at 688); *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must

---

[5] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g., Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies." (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

have in making tactical decisions.'" *Cullen*, 131 S. Ct. at 1406 (quoting *Strickland*, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S. Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S. Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S. Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at ---- , 131 S. Ct., at 779.

*Cullen*, 131 S. Ct. at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed" (citing *Richter*, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, 104 S. Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S. Ct. 2052."). This is so, because "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-

guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing *Bell v. Cone*, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S. Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range" of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)).

### 3. *Strickland's "prejudice" prong*

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable,"

likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S. Ct., at 791.

*Cullen*, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

### D. Langdeaux's objections

#### 1. Whether Landeaux would have accepted plea offer

Langdeaux contends that Judge Strand erred in finding no credible, non-conclusory evidence that Langdeaux would have accepted a plea of guilty to second degree murder. He argues that there is substantial credible and non-conclusory evidence in the record supporting his contention that he would have accepted a plea agreement to second degree murder if he had been properly advised of the effect of Iowa's felony murder rule.

Langdeaux's objection misstates Judge Strand's actual finding. Judge Strand did not find that there was no credible, non-conclusory evidence that Langdeaux would have accepted a plea of guilty to second degree murder. Instead, what Judge Strand actually found was that: "[t]here is *little* credible, non-conclusory evidence in the record to suggest a reasonable probability that Langdeaux, if properly advised by trial counsel, would have (a) accepted the plea offer and (b) provided a factual basis to support that plea." Report and Recommendation at 27 (emphasis added). Indeed, Judge Strand specifically considered the evidence that Langdeaux points to in his objection, namely, "the sentencing disparity between first degree murder and second-degree murder, evidence that the state's case was strong and the district court's finding that Langdeaux had not in fact been properly advised by counsel." *Id.* Moreover, Judge Strand correctly pointed out that, even if he found this evidence to be persuasive, it would still be insufficient to grant Langdeaux relief because, under § 2254(d), the Iowa Court of

33

Appeals's determination, that Langdeaux would not have accepted the plea offer, "is entitled to deference by the federal courts." *Worthington v. Roper*, 631F.3d 487, 495 (8th Cir. 2011) (holding that "a decision by a state court with respect to any claim that was adjudicated on the merits in State court proceedings is entitled to deference by the federal courts."); *see Forrest v. Steele*, 764 F.3d 848, 853 (8th Cir. 2014) (noting that "our review is governed by both § 2254(d) and *Strickland*, meaning we are to be "'twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel.'"") (quoting *Strong v. Roper*, 737 F.3d 506, 517 (8th Cir. 2013) (quoting in turn *Nooner v. Norris*, 402 F.3d 801, 808 (8th Cir. 2005)). Thus, the Iowa Court of Appeals's determination that Langdeaux's claim lacked merit precluded "federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarboroughv. Alvarado*, 541 U.S. 652, 664 (2004)). The Iowa Court of Appeals's determination that Langdeaux was not prejudiced was not an unreasonable application of *Strickland*. In reaching this conclusion, I am mindful of the Supreme Court's admonition that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786.

Langdeaux relies on *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003), and *Lalani v. United States*, 315 Fed. App'x 858 (11th Cir. 2009), in support of his objection. Those cases, however, do not compel a different decision here. In *Lalani* and *Griffin*, the petitioners were pursuing relief under § 2255, not § 2254 and its more deferential review standards. Moreover, in those decisions, the federal courts of appeals merely held that the record before the federal district courts warranted an evidentiary hearing to determine whether there was a "reasonable probability" that petitioners would have accepted a plea offer if properly advised. *See Lalani*, 315 Fed. App'x at 861; *Griffin*, 330 F.3d at 739. Here, the question of whether Langdeaux would have accepted a guilty

offer if properly advised was decided by the Iowa courts following an evidentiary hearing. As noted above, the Iowa Court of Appeals's conclusion on that question was not unreasonable. Therefore, Langdeaux's objection is overruled.

### 2.     *Whether Langdeaux could establish a factual basis to support plea*

Langdeaux also objects to Judge Strand's finding that the Iowa Court of Appeals's determination, that Langdeaux would have been unable to establish a factual basis for a guilty plea to second degree murder, was not unreasonable. Under Iowa law, the crime of murder in the second degree contains two elements—a person kills another person, and does so with malice aforethought. *State v. Lyman*, 776 N.W.2d 865, 877 (Iowa 2010); *see* IOWA CODE § 707.1 ("A person who kills another with malice aforethought either express or implied commits murder."); *State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001) (noting that malice aforethought required for both first- and second-degree murder). "Malice aforethought is a fixed purpose or design to do physical harm to another that exists before the act is committed. It does not have to exist for any particular length of time." *State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002); *see State v. Lee*, 494 N.W.2d 706, 707 (Iowa 1993).

In order to accept a guilty plea, the court must determine the plea is voluntary and intelligent and has a factual basis. [6] *See State v. Finney*, 834 N.W.2d 46, 61 (Iowa 2013) (citing IOWA R. CRIM. P. 2.8(2)(b)). The Iowa Court of Appeals found that trial counsel "believed Langdeaux would have been unable to establish a factual basis for a plea to second-degree murder, testifying, 'He wouldn't admit . . . that he killed Mr. Krogman without some provocation by the decedent. And the plea, in my opinion . . . would have been a shambles. . . . [H]e was just adamant that he didn't do anything wrong.'"

---

[6] The state would not permit Langdeaux to enter an *Alford* plea. *See North Carolina v. Alford*, 400 U.S. 25 (1970).

*Langdeaux*, 817 N.W.2d 31, 2012 WL 1439077, at *3. Langdeaux's trial counsel's belief was well-founded and fully supported by the record. As the Iowa Court of Appeals noted:

> Before, during, and after the trial, Langdeaux maintained his actions in stabbing the victim were justified. Immediately after his arrest, Langdeaux told police he stabbed the victim in self-defense. He repeated this story to a friend who had been with him that night, embellishing the details of the victim's supposed precipitating attack on him. Langdeaux admitted at trial the story he told his friend was a lie. He also lied to police about where he got the knife from and about the victim's friend ripping his shirt in order to support his claim of self-defense. *Cf.* [*Wanatee*, 101 F. Supp.2d] at 1206 (considering fact defendant did not lie to avoid liability in determining whether he established he would have pleaded guilty had he been properly advised). And in a letter to the court after trial, Langdeaux stated, "I did stab Mr. Krogman out of fear for myself, because he was coming after me, and I perceived Mr. Johnson on the other side of me, blocking my path. I felt it was necessary to defend myself." Finally, at the hearing on his postconviction application, Langdeaux agreed with the State that he did not believe he acted with malice aforethought.

*Id.* (footnote omitted). Given this record, it was not unreasonable for the Iowa Court of Appeals to conclude that the district court would have been unable to elicit a full and complete factual basis from Langdeaux for all elements of second degree murder. Therefore, this objection is also overruled.

## III. CERTIFICATE OF APPEALABILITY

Langdeaux must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case. *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). I determine that Langdeaux's petition does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c). *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, with respect to Langdeaux's claims, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c). Should Langdeaux wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## IV. CONCLUSION

For the reasons discussed above, I accept Judge Strand's Report and Recommendation. Therefore, Langdeaux's Petition for Writ of Habeas Corpus is

dismissed.  I further order that no certificate of appealability shall be issued for any of Langdeaux's claims.

**IT IS SO ORDERED.**

**DATED** this 21st day of April, 2015.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA